# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2020

Lyle W. Cayce
Clerk

No. 19-30555

Sidney Arnold,

*Plaintiff—Appellant*,

*versus*

Steven W. Williams, deputy,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-00344-SDD-RLB

Before Barksdale, Elrod, and Ho, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

We WITHDRAW the prior opinion filed September 24, 2020 and substitute the following.

After Deputy Steven Williams approached, questioned, and "reached to grab" Sidney Arnold just outside Arnold's home, Arnold fled, fell off a fence, and dislocated his shoulder. Arnold sued Williams pursuant to 42 U.S.C. § 1983 for violation of various constitutional rights and under Louisiana tort law. The district court disposed of all claims either through Federal Rule of Civil Procedure 12(b)(6) dismissal or Rule 56 summary

judgment. Because Arnold plausibly alleged an unreasonable search, we REVERSE the dismissal of Arnold's unreasonable-search claim under § 1983 and REMAND for consideration of qualified immunity on that claim. However, because Arnold either failed to state a claim or failed to raise a genuine dispute of material fact for his remaining claims, we AFFIRM the district court in all remaining respects.

## I.

Sidney Arnold and his brother lived in a garage apartment attached to a house while they worked for the homeowner.[1] On March 18, 2017, Arnold awoke around 2:00 AM to discover Deputy Steven Williams, an officer of the East Baton Rouge Parish Sherriff's Office, just outside the garage apartment, standing under the carport. Deputy Williams told Arnold that he saw an open door on the house, and he pointed to the open door. Arnold stepped out of the garage apartment to see where Deputy Williams was pointing. Deputy Williams then asked Arnold for his name and driver's license. Arnold gave his name but told Deputy Williams that he did not have a driver's license. Further, he told the deputy that the open door led to a laundry room but that the house could not be accessed from that laundry room.

Deputy Williams then "told" Arnold to come to his police car so he could determine Arnold's identity. Arnold declined and said, "No, sir, I will

---

[1] All facts described in this section are taken as true from Arnold's original complaint in order to properly address the 12(b)(6) dismissals of Arnold's § 1983 claims and his intentional-infliction-of-emotional-distress claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). Of course, legal conclusions couched as facts are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Some additional record facts are considered below in treatment of the summary judgment on Arnold's negligence claim. Those facts are identified as record facts, rather than allegations in the complaint, and they are construed in the light most favorable to Arnold, who opposed the summary-judgment motion. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

wake the lady who owns the home and she will tell you who I am and that I live here and work for her." Arnold then knocked on the homeowner's window. The homeowner emerged and confirmed that both Arnold and his brother lived in the garage apartment. Deputy Williams, however, was not satisfied with the homeowner's word, "and he reached to grab Sidney Arnold and Sidney Arnold ran."

Arnold ran towards the backyard and Deputy Williams gave chase. Arnold attempted to climb a fence, but instead he fell over it and dislocated his shoulder. Arnold was apprehended and taken to the hospital. Arnold was ultimately arrested and jailed for twenty days. All charges, however, were dropped for lack of probable cause.

Arnold filed a civil action against Deputy Williams under 42 U.S.C. § 1983 and Louisiana tort law. The § 1983 claims asserted illegal search and seizure in violation of the Fourth Amendment, false arrest and false imprisonment, malicious prosecution, and violation of substantive and procedural Due Process under the Fifth and Fourteenth Amendments.[2] The Louisiana tort law claims alleged negligence and intentional infliction of emotional distress.

Deputy Williams moved under Rule 12(b)(6) to dismiss all of Arnold's claims. The district court granted the motion as to all of Arnold's § 1983 claims and as to his intentional-infliction-of-emotional-distress claim. The court denied the motion as to the negligence claim because "[b]reach and causation are fact bound determinations inappropriate for resolution at the pleading stage." The case proceeded through discovery, and Deputy

---

[2] The district court correctly observed that only the Fourteenth Amendment's Due Process Clause, and not the Fifth Amendment's, applies to state law enforcement officers, such as Deputy Williams.

No. 19-30555

Williams then moved for summary judgment on the remaining negligence claim. The district court granted the motion and rendered judgment in favor of Deputy Williams, dismissing the matter in its entirety.[3] Arnold now appeals the 12(b)(6) dismissals of his § 1983 and intentional-infliction-of-emotional-distress claims and the grant of summary judgment, as well as the district court's ruling on three evidentiary issues.

## II.

The district court dismissed both Arnold's unreasonable-search claim and his unreasonable-seizure claim under Rule 12(b)(6). We review 12(b)(6) dismissals *de novo*. *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). Rule 8 requires that a plaintiff's pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges facts that, accepted as true, allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[3] The district court's order is styled as a "Judgment," and it states that it dismisses "this matter in its entirety." On its face, then, this judgment is an appealable final order. However, the district court's dismissal of Arnold's unreasonable-seizure and malicious-prosecution claims were made "without prejudice to the filing of a motion for leave to amend." Arnold did not amend his complaint. This raises an issue similar to the "finality trap" we addressed in *Williams v. Seidenbach*, 958 F.3d 341 (5th Cir. 2020) (en banc). In *Williams* we determined that voluntary dismissal without prejudice of some claims does not prevent an appeal on the remaining claims resolved through partial final judgment. *Id.* at 344. Here, two of Arnold's claims were involuntarily dismissed "without prejudice to the filing of a motion for leave to amend," and the district court later entered judgment purporting to dispose of all claims. Because Arnold declined to file a motion for leave to amend and because the district court's judgment disposes of "this matter in its entirety," we construe that judgment as an appealable final decision.

*Id.* While the court must accept the facts in the complaint as true, it will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead "two—and only two—allegations . . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The doctrine of qualified immunity, however, adds a wrinkle to § 1983 pleadings when qualified immunity is relevant. Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. However, because qualified immunity is "not simply immunity from monetary liability" but also "immunity from having to stand trial," there is an interest in qualified immunity entering a lawsuit "at the earliest possible stage of litigation." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

This immunity-from-suit interest does not require that the plaintiff's original complaint exceed the short-and-plain-statement standard of Rule 8. *Anderson*, 845 F.3d at 589–90. Rather, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). That is, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy

*Twombly* and *Iqbal*.   Furthermore, if the defendant first raises qualified immunity, the district court, "'*may* [*then*] *in its discretion*, insist that a plaintiff file a reply tailored to [the defendant's] answer [or motion to dismiss] pleading the defense of qualified immunity.'"   *Anderson*, 845 F.3d at 590 (alterations in original) (quoting *Shultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995)).

In this case, Arnold broadly addressed qualified immunity in his original complaint by alleging that Deputy Williams "knowingly violated" "clearly established law."   Williams explicitly raised qualified immunity in his memorandum in support of his motion to dismiss, but the district court did not require Arnold to file a *Shultea* reply tailored to the defense of qualified immunity.   In his memorandum in opposition to the motion to dismiss, Arnold addressed qualified immunity, albeit in a merely conclusory fashion: "The Court should find that qualified immunity does not apply to this case."   In dismissing Arnold's unreasonable-search and unreasonable-seizure claims, the district court did not determine if Williams is entitled to qualified immunity on those claims.   Rather, it granted 12(b)(6) dismissal because it concluded that Arnold did not plausibly allege a search or seizure.

We first consider whether Arnold plausibly stated either an unreasonable search or an unreasonable seizure by turning to the two elements of a § 1983 claim set forth in *Gomez*: (i) deprivation of a federal right; and (ii) action under color of state law.   *Gomez*, 446 U.S. at 640.   The district court correctly recognized that Arnold sufficiently pleaded the second element, action under color of state law, for both the unreasonable-search claim and the unreasonable-seizure claim.   In reviewing Arnold's complaint, we determine that Arnold also plausibly alleged the first element as to the unreasonable-search claim but not as to the unreasonable-seizure claim.

Arnold's complaint consists of a narrative recitation of facts followed by a series of legal claims. Although the complaint is difficult to follow, the factual allegations in combination with the short legal claims plausibly state a search within the meaning of the Fourth Amendment. Arnold alleges that Williams entered the curtilage of Arnold's home, questioned him, and then asked him for identification. Arnold then summarizes these facts with the legal claim that "[a]ctions taken related to the stop, seizure and search were objectively unreasonable and violated clearly established law."

We hold that Arnold's complaint plausibly alleges a trespassory search of his home. *See Florida v. Jardines*, 569 U.S. 1, 5, 7 (2013) ("When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.' . . . [A]n officer's leave to gather information is sharply circumscribed when he steps off [public] thoroughfares and enters the Fourth Amendment's protected areas.") (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)). The complaint alleges that Arnold found Williams lingering in an odd part of the curtilage—under the carport—at an odd hour—2:00 a.m—and that Williams immediately asked for identification from Arnold when he emerged. There is nothing in the complaint to suggest that Williams knocked; to the contrary Arnold alleges that "he was awoken by the sound of someone outside his door." Arnold alleges actions that would fall outside the "implicit license" afforded private visitors. *See id.* at 8. These details make plausible the allegation that Williams's search of the curtilage of Arnold's home was unreasonable insofar as it infringed on Arnold's reasonable expectation of privacy and exigent circumstances were lacking. *See Katz v. United States*, 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring); *United States v. Williams*, 581 F.2d 451, 453 (5th Cir. 1978).

Conversely, Arnold's further assertions that Williams "wanted his name" and "wanted to see a driver's license" and then "told" Arnold to come to his police car do not plausibly allege a seizure. Supreme Court and Fifth Circuit caselaw makes clear that a Fourth Amendment seizure occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority to which an individual submits. *See California v. Hodari D.*, 499 U.S. 621, 625–26 (1991); *see also Brendlin v. California*, 551 U.S. 249, 254 (2007); *Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015). Arnold alleges at most an attempt to apply physical force when he says that Deputy Williams "reached to grab" Arnold. He simply does not allege actual physical force. Arnold does allege a show of authority on behalf of Deputy Williams, particularly when he alleges that Deputy Williams "told" him to go to the car. Arnold does not, however, allege that he submitted to that authority. *Cf. Carroll*, 800 F.3d at 170. He alleges instead that when Deputy Williams told him to go to the car, he declined. Further, he alleges that when Deputy Williams reached to grab him, he fled. The complaint lacks allegations that would allow us, drawing all reasonable inferences in Arnold's favor, to conclude that Arnold plausibly alleged a seizure within the meaning of the Fourth Amendment.

At the 12(b)(6) stage of litigation, it is inappropriate for a district court to weigh the strength of the allegations. *Twombly*, 550 U.S. at 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). Instead, the district court must simply decide if the complaint plausibly alleges a claim for relief. *Iqbal*, 556 U.S. at 678. By stating a Fourth Amendment claim under § 1983 and stating facts that make plausible an unreasonable search, Arnold meets the minimal pleading standard necessary to survive a 12(b)(6) motion to dismiss on that claim, at

least as to the two § 1983 elements set forth in *Gomez*. He has not done so for his unreasonable-seizure claim.

Ordinarily, after determining that a plaintiff had plausibly alleged constitutional violations, we would turn to the qualified-immunity analysis. *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). Here, however, "the district court found the complaint deficient on its face and never reached" qualified immunity. *Id.* "Because as a general rule, we do not consider an issue not passed upon below, we remand for the district court to decide in the first instance whether [qualified immunity] defeats" Arnold's unreasonable-search claim. *Id.* (internal quotation marks and footnotes omitted). We therefore reverse the dismissal of the unreasonable-search claim and remand for the district court to consider qualified immunity before proceeding to the merits of the case. We however affirm the dismissal of the unreasonable-seizure claim.

## III.

The district court dismissed Arnold's remaining § 1983 claims and his intentional-infliction-of-emotional-distress claim on 12(b)(6) grounds. The court also granted summary judgment on Arnold's negligence claim and issued three evidentiary rulings. We affirm the district court on these dismissals, the summary judgment, and the evidentiary rulings.

Arnold's remaining § 1983 claims include false arrest/false imprisonment, malicious prosecution, and procedural and substantive due process. Because each of these was dismissed under Rule 12(b)(6), we review the dismissals using the same standard described above for the unreasonable-search and unreasonable-seizure claims.

Arnold failed to state a false arrest/false imprisonment claim, because he failed to plausibly allege that his ultimate arrest was false. The district court was wrong to seemingly adopt the "'heightened' pleading

requirement" urged by Williams.  As explained above, § 1983 claims implicating qualified immunity are not subject to a heightened pleading standard.  *Anderson*, 845 F.3d at 590.  Nevertheless, after reviewing the record, we agree with the district court that "the sparse and conclusory factual allegations are insufficient to state a claim for false arrest/false imprisonment."  Because Arnold's conclusory allegations do not plausibly allege false imprisonment or false arrest, 12(b)(6) dismissal was proper.

Specifically, to state a § 1983 claim for false arrest/false imprisonment, Arnold must plausibly allege that Williams "did not have probable cause to arrest him."  *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004).  It is unclear from the complaint when exactly Arnold claims he was arrested and detained, but, based on the sequence of events in the complaint, this arrest must have occurred after Arnold fled and fell over the backyard fence.  The complaint does not plausibly explain why Arnold's flight and his trespass onto the neighboring property would not constitute probable cause for Williams to arrest him.  Failing to plausibly allege an essential element of a false arrest/false imprisonment claim, Arnold failed to state a claim.

Arnold also failed to state a claim for malicious prosecution under § 1983 because, as the district court correctly observed, there is no freestanding right under the Constitution to be free from malicious prosecution. *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020).  Rather, facts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as unreasonable search or seizure. There is no independent constitutional claim for malicious prosecution.

Similarly, Arnold failed to state a claim for a violation of procedural and substantive due process because resort to a generalized remedy under the Due Process Clause is inappropriate where a more specific constitutional

provision provides the rights at issue. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). In those situations, the specific provision, "not the more generalized notion of 'substantive due process,'" better guides analysis of a plaintiff's claims. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Arnold's rights are protected by the unreasonable-searches-and-seizures clause of the Fourth Amendment. Thus, Arnold fails to state a claim under the Fourteenth Amendment's Due Process Clause. He also fails to state a claim under the Fifth Amendment's Due Process Clause because Deputy Williams was an officer of the state of Louisiana rather than of the federal government. We affirm the dismissal of all of Arnold's § 1983 claims beyond his unreasonable-search claim.

We affirm also the district court's dismissal of Arnold's intentional-infliction-of-emotional-distress claim under Louisiana law. Arnold simply failed to allege any conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

Finally, we affirm the district court's grant of summary judgment and the three evidentiary rulings appealed by Arnold. The first evidentiary ruling is a denial of Arnold's motion to strike documents offered by Williams. This court reviews a motion to strike for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). Arnold does not argue that the district court abused its discretion, but only that the district court "improperly considered the documents." Without a basis in the briefs or in the record to establish an abuse of discretion, we affirm.

The second evidentiary ruling is a denial of Arnold's motion to supplement his opposition to Williams's motion for summary judgment with a declaration by Arnold's brother Jason Arnold. "We review a district

court's denial of a motion to amend or supplement pretrial materials, such as briefs in opposition to summary judgment, for abuse of discretion." *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019). Arnold argues only that the district court "improperly disregarded the declaration" and not that it abused its discretion. Further, nothing in the record supports a conclusion that the district court abused its discretion, and so we affirm.

The third evidentiary ruling is a denial of Williams's motion *in limine* to exclude testimony by Arnold's expert Lloyd Grafton. In his original brief, Arnold incorrectly states that the district court excluded Mr. Grafton's testimony from evidence. In his reply brief, "Mr. Arnold's counsel admits she misread the limine order" and that Mr. Grafton's testimony was not excluded from evidence. Nevertheless, Arnold argues that the district court "completely ignored" Mr. Grafton's testimony in its summary judgment analysis. To the extent that Arnold still challenges the district court's denial of the motion *in limine* regarding Mr. Grafton, we affirm the district court. Mr. Grafton's report remains part of the record available to this court as we review the grant of summary judgment on Arnold's final claim of negligence.

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court. Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Petro Harvester Operating Co. v. Keith*, 954 F.3d 686, 691 (5th Cir. 2020) (citations and internal quotation marks omitted). Reviewing the record, including Mr. Grafton's report, we conclude that there is no genuine dispute of material fact as to Arnold's negligence claim. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under Louisiana law, a police officer making an arrest owes a duty to act reasonably under the totality of the circumstances. *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318,

No. 19-30555

322 (La. 1994).[4]  None of the disputed facts identified in the Appellant's reply or raised by Mr. Grafton's report or present elsewhere on the record are material to Williams' duty to act reasonably; none of them would "affect the outcome" that Williams acted reasonably in carrying out the arrest. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We affirm the grant of summary judgment on Arnold's negligence claim.

\*        \*        \*

The judgment of the district court is REVERSED in part and AFFIRMED in part, and the case is REMANDED.

---

[4] The Louisiana Supreme Court has set forth the following factors to consider when evaluating the reasonableness of a means of arrest: "(1) the known character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment." *Mathieu*, 646 So.2d at 322–23.