# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 7, 2025

Lyle W. Cayce
Clerk

No. 24-30232

Chad Melancon,

*Plaintiff—Appellant*,

*versus*

Bradley Walsh, *Individually and in his Capacity as a duly Commissioned law enforcement officer for St. Charles Parish*; Greg Champagne, *Sheriff*; Unidentified Party,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-7394

_____

Before Engelhardt, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Chad Melancon brought this action against Defendants-Appellees Bradley Walsh and Greg Champagne for constitutional and state law violations arising from his allegedly unlawful arrest for residential contractor fraud. The district court found Melancon's

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30232

arrest was supported by probable cause and dismissed all claims. We AFFIRM.

## I.

## A.

Defendant-Appellee Bradley Walsh, a police officer for St. Charles Parish Sheriff's Office, applied for a warrant to arrest Plaintiff-Appellant Chad Melancon for committing residential contractor fraud. We begin by summarizing the affidavit Walsh submitted in support of the arrest warrant.[1]

In the affidavit, Walsh stated that he was assigned to a complaint by a homeowner regarding her contractor Melancon not completing work, installing items without approval, and doing work that violated code regulations. In her initial complaint made to another officer, the homeowner explained that she entered a contract with Melancon's construction company for work on her residence for just over $200,000, and she had already paid $220,000. The homeowner confronted Melancon but "he only requests more money . . . which she refuses to pay until he makes good with the work he has already been paid to complete." The homeowner provided copies of the contract, estimate paperwork, and receipts.

The affidavit goes on to describe Walsh meeting with the homeowner at her residence, along with a contractor and structural inspector. From this meeting, Walsh learned the following: Melancon only obtained a permit for replacing the roof and did not obtain permits for structural changes made to the residence; the homeowner alleged Melancon falsified paperwork to show

---

[1] On a motion to dismiss, the court may "consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

he paid for hardware that the homeowner's receipts showed she purchased; and the homeowner claimed to have requested a specific style of "J&K" cabinet but Melancon installed the wrong-color cabinets and claimed they were custom built. Walsh observed that at least some of the cabinets were stamped with the "J&K" logo, were minorly damaged, and could have been left over from a previous job. He also observed that the painting in the house that had been paid for was not completed, floors were damaged, and unapproved items had been installed in the garage.

According to Walsh's affidavit, the homeowner explained she asked Melancon if he had abandoned the project because several things she paid for were left unfinished, and Melancon responded with a change order and advised he would not complete any work if it was not paid. The homeowner paid the additional $10,700 because she felt it was her only option, but claimed that "there were a few things on the change order that she hadn't yet received as well as things that she didn't ask for but was being charged for." In their last communication, Melancon informed the homeowner to contact his attorney as he would not be accepting further communications from her. Walsh concludes his affidavit by stating that he "attempted to make contact with Melancon but to n[o] avail." Based on the affidavit, a judge issued the warrant to arrest Melancon for one count of "Residential Contractor Fraud $5k to $25K--(Felony)" on December 27, 2022.

Turning to the complaint, we take the following well-pleaded facts as true. *See Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). On December 28, Walsh issued a supplemental report, which acknowledged that Melancon "was also alleging additional monies owed to him through the victim's change order." Walsh did not provide the supplemental report to the judge who issued the warrant. The next day, Walsh entered Melancon's information into a database, notifying law enforcement of the outstanding warrant. On December 30, Walsh contacted another officer and asked that

No. 24-30232

Melancon be picked up and arrested because the homeowner wanted Melancon arrested that day. Melancon was arrested that same day and held through the New Year's holiday, away from his family, until he was able to post bond on January 4, 2023. The District Attorney's office later refused the charges.

In a subsequent civil suit between the homeowner and Melancon's company, Walsh testified that he attempted to contact Melancon only once and did not verify his phone number, leave a message, or follow up. Walsh also answered "no" to a series of questions about whether he concluded Melancon had committed any of the seven actions from which the residential contractor fraud statute specifies "misappropriation or intentional taking may be inferred." LA. STAT. § 14:202.1. Walsh further testified that "he believed that Melancon was taking the position that the alleged victim still owed him money in order for him to complete the work before Melancon came back to work"; "he had no idea what constituted the actual monetary component of the dispute"; "there was no information to suggest that the alleged victim was either coerced or somehow untowardly forced to sign the construction contract with Melancon"; and "he was aware that Melancon had previously hired his own lawyer once there was a dispute with the alleged victim" but made no effort to contact Melancon's lawyer.

Melancon also alleges that Walsh testified that he was neither a licensed contractor nor had he taken courses on or worked in the field of contractor fraud. Despite this lack of experience and training, he agreed to take over the financial crimes division and handle all financial crimes involving contractor fraud. And Walsh admitted there are no specific guidelines for contractor fraud cases, or any standard operating procedures or guidelines related to financial crimes.

No. 24-30232

**B.**

Melancon filed suit against Walsh, individually and in his official capacity as a law enforcement officer for St. Charles Parish, and against Greg Champagne, individually and in his official capacity as Sheriff of St. Charles Parish. Seeking money damages under 42 U.S.C. § 1983, Melancon brought claims for unlawful arrest, abuse of process, malicious prosecution, punitive damages, and *Monell* liability. He also brought a Louisiana state law claim for intentional infliction of emotional distress.

Walsh and Champagne (Defendants-Appellees) filed a motion to dismiss, asserting the defense of qualified immunity, and attaching Walsh's affidavit and the arrest warrant. Defendants-Appellees also took issue with Melancon's reliance on Walsh's answers when he was deposed as a witness in a later civil suit between the homeowner and Melancon's company, citing to and attaching a notice of deposition of Walsh from November 2023. In Melancon's opposition to the motion to dismiss, he acknowledged the complaint referenced and included excerpts of Walsh's deposition and attached the full transcript.

The district court granted Defendants-Appellees' motion to dismiss on April 1, 2024. Beginning with false arrest, the district court found that the claim was defeated by the issuance of a facially valid arrest warrant establishing probable cause, and rejected arguments that the warrant (a) was so lacking in indicia of probable cause as to make it facially unreasonable, or (b) was based on omission or misrepresentation, without which there was no probable cause. Next, the district court held that Melancon's failure to plead the absence of probable cause also defeated his remaining federal claims for abuse of process, malicious prosecution, punitive damages, and *Monell* liability. Having dismissed all federal claims, the district court dismissed the remaining supplemental state law claims. Finally, the district court

5

concluded Defendants-Appellees are also shielded from liability by qualified immunity. This appeal timely followed.

## II.

"Dismissals for failure to state a claim are reviewed de novo." *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021). At this stage in proceedings, a court must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020) (quoting *Benfield*, 945 F.3d at 336). Dismissal is appropriate if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Melancon asserts constitutional claims under 42 U.S.C. § 1983. "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead two—and only two—allegations." *Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021) (quoting *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020)). "First, the plaintiff must allege that some person has deprived him of a federal right." *Id.* (quoting *Arnold*, 979 F.3d at 266). "Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Id.* (quoting *Arnold*, 979 F.3d at 266).

Where, as here, a plaintiff is "confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). "The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "We undertake a two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* (citing *Pearson*, 555 U.S. at 232). Courts "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Guerra*, 82 F.4th at 285 (quoting *Pearson*, 555 U.S. at 236).

## III.

On appeal, Melancon pursues Fourth Amendment claims of false arrest and malicious prosecution against Walsh in his individual capacity, and *Monell* liability claims against both Walsh and Champagne in their official capacities.[2]

## A.

We begin with Melancon's claims against Walsh individually and focus on the first prong of the qualified immunity analysis—whether Melancon has alleged a constitutional violation. Melancon argues that he sufficiently alleged a Fourth Amendment violation under *Franks*. In *Franks*, "the Supreme Court held an officer violates the Fourth Amendment if he deliberately or recklessly provides false information necessary to secure an arrest warrant." *Laviage v. Fite*, 47 F.4th 402, 406 (5th Cir. 2022) (citing

---

[2] While Melancon originally filed suit against Walsh and Champagne in both their individual and official capacities, Melancon does not pursue claims against Champagne in his individual capacity on appeal.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To prevail on a *Franks* claim, "plaintiffs must show that (1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of probable cause." *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021).

The last element requires courts to conduct a "corrected affidavit" analysis to determine "whether the warrant affidavit would support probable cause if the misstatements and material omissions were eliminated." *Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024). Whether a warrant affidavit provides probable cause is a question of law this court reviews de novo. *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006). Probable cause means a "fair probability" that the defendant committed the crime, which requires more than a "bare suspicion" but less than a preponderance of the evidence. *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (quoting *United States v. Watson*, 273 F.3d 599, 602–03 (5th Cir. 2001)). To determine if probable cause exists, courts "must look to the 'totality of the circumstances' and decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018)).

Relying on Walsh's affidavit, a judge found probable cause to arrest Melancon for residential contractor fraud. Residential contractor fraud is defined as (1) "the misappropriation or intentional taking of anything of value which belongs to another" (2) without consent or by fraudulent means, by (3) "a person who has contracted to perform any home improvement or residential construction." La. Stat. § 14:202.1. The statute says that misappropriation "may be inferred when a person does any of the following"

and goes on to enumerate seven actions, such as failing "to perform any work during a forty-five-day period of time or longer after receiving payment." *Id.* Finally, the statute sets forth varying maximum sentences and fines depending on the value of the misappropriation, including as relevant here, a value between five and twenty-five thousand dollars. *Id.*

This case turns on the "corrected affidavit" analysis. Melancon argues that he sufficiently stated a *Franks* claim by alleging that Walsh intentionally omitted information from the affidavit that would have vitiated probable cause if included. Specifically, Melancon relies on information Walsh later admitted knowing in a supplemental report and deposition to allege that Walsh made five material omissions. Examining the effect on probable cause after correcting the affidavit for each alleged omission, we conclude that Melancon fails to state a *Franks* claim because the reconstructed affidavit still sufficiently establishes probable cause.

First, Melancon relies on Walsh's deposition to allege Walsh materially omitted from the affidavit that "there was no issue as to the quality of the work performed."[3] In response to the question of whether Walsh concluded anything the homeowner complained about was not fraud, Walsh responded "[j]ust the quality of work . . . I'm not charging him for quality of work." To reflect that Melancon was not being charged for the quality of the work, we remove any references to quality from the affidavit, such as the discussion of the wrong-color cabinets with minor damage. But the correction is immaterial because probable cause is established through allegations unrelated to the quality of work, including the $20,000

---

[3] Because we find that Melancon would fail to state a *Franks* claim even if the portions of the deposition testimony Melancon relies on were reproduced directly in the complaint, we do not decide whether the entire transcript is properly considered part of the pleadings.

discrepancy between the amount paid and the contract, and work that was paid for but not completed.

Second, Melancon argues it was material to omit that Walsh "did not know about the precise dollar amounts involved" because the value determines "whether the offense should be charged as a felony." Melancon alleged in his complaint that "Walsh testified that he had no idea what constituted the actual monetary component of the dispute" and had "no evidence to support the $5,000 - $25,000 contractor fraud violation." Taking these allegations as true, the affidavit must be corrected to reflect that Walsh did not know the amount of money in dispute, or at least not the precise dollar amount. Walsh's lack of knowledge of the specific amount in dispute is not inconsistent with, and so does not negate, anything in the affidavit on which probable cause for the value of the work could be based, including the homeowner's complaint that "she has paid over $220,000" although the contract was for "just over $200,000." Therefore probable cause for finding a violation of between five and twenty-five thousand dollars is unaffected by this omission.

Third, Melancon argues Walsh materially omitted that he "did not know the nature of any work that was allegedly not completed" by Melancon. But the pages of the deposition transcript Melancon relies on merely discuss the quality of the work (covered in the first alleged omission) and then go on to discuss the monetary value of the work (covered in the second alleged omission). Accordingly, this alleged omission fails for the same reasons.

Fourth, Melancon alleges Walsh omitted that Melancon and the homeowner were in a dispute over "payment for additional renovations that [the homeowner] requested pursuant to a change order." The complaint specifically states that Walsh knew "Melancon was taking the position that the alleged victim still owed him money in order for him to complete the work

before Melancon came back to work." As the district court reasoned, the allegation that Melancon had a monetary demand against the homeowner does not "retract[] allegations upon which probable cause was established." In any case, the affidavit already substantially included this alleged omission by stating that "[Melancon] only requests more money to which [the homeowner] refuses to pay until he makes good with the work he has already been paid to complete." Therefore any "correction" would be immaterial to the finding of probable cause.

Finally, Melancon argues it was material to omit that Walsh "did not conclude that [Melancon] had committed any of the seven enumerated actions that would have allowed the inference that [Melancon] had misappropriated or intentionally taken [the homeowner's] property in violation of" the statute. Importantly, Melancon does not contend that the affidavit contains a false or misleading statement implying that Walsh *did* conclude one of the enumerated actions occurred. Nor does Melancon argue that the mere absence of an enumerated action renders the affidavit facially invalid. *See Kohler*, 470 F.3d at 1113 (explaining that the "materiality analysis presumes that the warrant affidavit, on its face, supports a finding of probable cause"). Because the affidavit suffices to establish probable cause without a conclusion that an enumerated action was committed, probable cause remains after reconstructing the affidavit to indicate the absence of any such conclusion.

In sum, the five alleged omissions are immaterial. Probable cause remains even after reconstructing the affidavit to exclude references to the quality of Melancon's work; add Walsh's lack of knowledge about the monetary value of the dispute; and indicate that Walsh did not conclude Melancon committed an enumerated action. As a result, Melancon fails to plead a Fourth Amendment violation under *Franks*.

Failure to plead a *Franks* claim defeats Melancon's claims against Walsh in his individual capacity. Without a *Franks* violation, Melancon cannot allege the absence of probable cause—a baseline requirement for the Fourth Amendment claims of false arrest and malicious prosecution. *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (false arrest); *Thompson v. Clark*, 596 U.S. 36, 43 (2022) (malicious prosecution). Because Melancon has not alleged a constitutional violation, Walsh is also entitled to qualified immunity. *See Scott v. City of Mandeville*, 69 F.4th 249, 256 (5th Cir. 2023) (finding "no need to reach the second step of the qualified immunity analysis" because there was probable cause to arrest). And without an underlying constitutional violation, Melancon cannot sustain a claim for punitive damages under § 1983. Therefore the district court did not err in dismissing Melancon's claims for false arrest, malicious prosecution, and punitive damages.

## B.

Similarly, failure to plead a constitutional violation defeats Melancon's claims against both Walsh and Sheriff Champagne in their official capacities. Official capacity suits are really suits against the governmental entity of which the officials act as agents. *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023). To bring a claim against a municipality under § 1983, or a *Monell* claim, plaintiffs must show "the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As with Melancon's other claims, the district court correctly found that the "failure to plead the absence of probable cause—and, thereby, state a constitutional violation"—defeats the *Monell* claim. *See Reitz*, 85 F.4th at 795 (finding

No. 24-30232

"[f]urther discussion of *Monell*'s elements, contours, and jurisprudence is unnecessary," where there was no constitutional violation).

\* \* \*

It is not lost on the court that Melancon spent six days in jail for charges that were ultimately rejected. While Melancon highlights the timing of his arrest, there is nothing in the record to suggest that Walsh had any control over the duration of Melancon's incarceration. Melancon has not claimed he was denied a right to bail, has not challenged the constitutionality of the statute under which he was arrested, and has not alleged a retaliatory motive for his arrest. On these facts, probable cause defeats Melancon's claims. In so holding, we do not minimize the gravity of the deprivation to Melancon's liberty. We stress that individuals like Melancon "remain clothed with a presumption of innocence and with their constitutional guarantees intact." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (citing *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). Presumed innocent until proven guilty, arrestees retain a "strong interest in liberty." *United States v. Salerno*, 481 U.S. 739, 750 (1987). Arresting and jailing a citizen is no small matter, and we expect law enforcement to exercise such power with care to protect this interest in liberty.

## IV.

Finding no reversible error in the district court's proceedings, we AFFIRM.

13