# United States Court of Appeals for the Fifth Circuit

————————

No. 23-30775

————————

United States Court of Appeals
Fifth Circuit

**FILED**

September 23, 2024

Lyle W. Cayce
Clerk

BRANDY MCKAY, *Individually, and on behalf of her minor child*, P.M.,

*Plaintiff—Appellee*,

*versus*

DAVID LACROIX, TROOPER; ROHN BORDELON, SERGEANT,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-2304

———————————————————————

Before JONES, WILLETT, and ENGELHARDT, *Circuit Judges*.
KURT D. ENGELHARDT, *Circuit Judge*:

Louisiana State Police ("LSP") senior trooper August McKay committed suicide in his own home after learning that the LSP was reassigning him and preparing to execute a search warrant on his house. His widow sued several LSP officers, alleging claims under 42 U.S.C. § 1983 and Louisiana state law in connection with his death. The district court declined to grant qualified immunity to two of the officers. We reverse that decision.

No. 23-30775

## I.

## A.

In December 2020, the LSP Narcotics Division began investigating allegations that senior trooper August McKay was using fraudulent prescriptions to obtain controlled substances from a local pharmacy. As part of this investigation, LSP officers obtained a warrant to search August's residence.[1] On the morning that they planned to execute the search warrant, they asked Appellants, Sergeant Rohn Bordelon and Trooper David LaCroix, for their assistance. They instructed Sgt. Bordelon and Trooper LaCroix to inform August that he was going to be reassigned and to gain a "Code Four"—a police signal code that indicates to other officers that "everything is under control and the scene is safe"—so that other detectives could execute the search warrant.

On the way to August's home, Sgt. Bordelon and Trooper LaCroix "discussed different scenarios," including the possibility that August might arm himself and attempt to commit "suicide by cop." August had been "in and out of the hospital for medical reasons and had been out on [family and medical leave]" so they "were not sure about the state of mind [he] would be in" and "were not sure how things were going to go." They created a contingency plan that if August armed himself and attempted to commit suicide by cop, they would retreat and treat the situation as a "barricaded subject."

When Sgt. Bordelon and Trooper LaCroix arrived at August's residence, they noticed that his take-home police vehicle was not there. They knocked on the door and were greeted by August's minor child, P.M., and

---

[1] Because the decedent, August McKay, and the appellee, Brandy McKay, share a last name, we refer to them by their first names to ensure clarity.

wife, Brandy McKay. Brandy invited the officers in the house to wait for August's arrival. Once August returned home, Sgt. Bordelon informed him that he was being placed on administrative leave and that he needed to go outside to sign some paperwork. Outside, Sgt. Bordelon told August that the LSP had a search warrant for the residence and intended to execute it. Sgt. Bordelon asked August if Brandy, P.M., and P.M.'s minor friend who was visiting could leave the residence. August agreed that they should leave, and Sgt. Bordelon and Trooper LaCroix accompanied him back inside.

Upon reentering the house, August made his way to the master bedroom closet. Trooper LaCroix observed two handguns on a closet shelf and confiscated them over August's objection. Trooper LaCroix told him that "the department was going to take them anyway, so he would hold them." August then proceeded to use his master restroom while Trooper LaCroix stood outside the open door and observed.

By the time August returned to the master bedroom, Sgt. Bordelon and Brandy had entered the bedroom. While Brandy spoke to the officers about what was happening, August walked back into the closet and retrieved his LSP department-issued firearm. As August chambered a round, Trooper LaCroix exclaimed, "Gus, no, what are you doing?" Following the contingency plan they made that morning, Sgt. Bordelon told Trooper LaCroix to "back out," and both officers left the McKay home. Brandy unsuccessfully attempted to take the firearm from August, who then fatally shot himself.

## B.

Appellee Brandy McKay, in her individual capacity and on behalf of her minor child, sued several LSP officers, including Sgt. Bordelon and Trooper LaCroix. She brought claims under 42 U.S.C. § 1983 for alleged violations of August's Fourth, Eighth, and Fourteenth Amendment rights,

as well as various Louisiana state laws. In response, the defendants filed a Rule 12(b)(6) motion to dismiss, or in the alternative, a motion for more definite statement under Rule 12(e). They also asserted qualified immunity. The district court granted the defendants' motion as to Brandy's § 1983 claim for alleged violations of the Eighth Amendment, but otherwise denied the motion, and granted Brandy leave to amend her complaint to allege facts tailored to qualified immunity.

Brandy filed a supplement to her original complaint, this time limiting her claims to the Fourteenth Amendment and various state laws. The defendants again filed a Rule 12(b)(6) motion to dismiss and asserted qualified immunity. When ruling on the motion, the district court noted that Brandy had voluntarily dismissed her claims against several defendants and granted their dismissals. This left only four defendants: Sgt. Bordelon, Trooper LaCroix, and two others.

When addressing the remaining defendants' assertions of qualified immunity, the district court concluded that Brandy had pled sufficient facts to state § 1983 claims against Sgt. Bordelon and Trooper LaCroix but dismissed the § 1983 claims against the other two defendants. To reach this conclusion, the court asked whether, accepting the pleaded facts as true, defendants: (1) had subjective knowledge of August's risk of suicide; and (2) responded to August's risk of suicide with deliberate indifference. The district court also concluded that Brandy stated negligence claims against Sgt. Bordelon and Trooper LaCroix but dismissed the negligence claims against the other two defendants. Sgt. Bordelon and Trooper LaCroix timely filed this interlocutory appeal.

## II.

We first assess whether we have jurisdiction. *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). Absent an exception, non-final district court

orders are not immediately appealable. *Leonard v. Martin*, 38 F.4th 481, 485–86 (5th Cir. 2022). The denial of a defendant's motion to dismiss asserting qualified immunity is an immediately appealable decision under the collateral order doctrine, *Mitchell v. Forsyth*, 472 U.S. 511, 527–30 (1985), because qualified immunity provides immunity not just from liability but also from suit, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The collateral order doctrine only applies to the qualified immunity portion of a district court order. *Morin v. Caire*, 77 F.3d 116, 119 (5th Cir. 1996). Nonetheless, in the interest of judicial economy, we may have discretion to exercise pendent appellate jurisdiction to review other claims at the same time. *Id.* Pendent appellate jurisdiction is only proper in "rare and unique circumstances" though, *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998), and is always discretionary, *Mi Familia Vota v. Ogg*, 105 F.4th 313, 333 (5th Cir. 2024).

Sgt. Bordelon and Trooper LaCroix seek interlocutory review of the district court's entire order denying their motion to dismiss, wherein they sought dismissal of the § 1983 claims and Louisiana state law claims. As to the § 1983 claims, they asserted qualified immunity.[2] We have jurisdiction, under the collateral order doctrine, to review the district court's denial of qualified immunity. *See Mitchell*, 472 U.S. at 527–30. As to the portion of the district court's order that denied dismissal of the state law claims, we only

---

[2] Here, Sgt. Bordelon and Trooper LaCroix contend that qualified immunity bars Brandy's state law claims too. They did not raise this as a jurisdictional basis for an interlocutory appeal, however. Even if they had, they did not assert state law qualified immunity at the district court, which forfeits their ability to raise it here. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal[.] . . . We do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal.").

No. 23-30775

have jurisdiction if we can exercise pendent jurisdiction. *See Morin*, 77 F.3d at 119. Sgt. Bordelon and Trooper LaCroix have neither asked us to exercise pendent jurisdiction, nor demonstrated why this is the rare and unique case where it is warranted. We therefore decline to review the state law claims.[3]

## III.

We review orders on Rule 12(b)(6) motions to dismiss for failure to state a claim under the *de novo* standard of review. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021). In doing so, we must accept all facts in the complaint as true, but do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020).

## IV.

## A.

The defense of qualified immunity protects state officials from civil suit and liability when they could have reasonably believed that their actions were legal. *Pearson*, 555 U.S. at 231. A state official is entitled qualified immunity unless: (1) the plaintiff alleged a violation of a constitutional right; and (2) that right was "clearly established" at the time of the alleged violation. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson*, 555 U.S. at 232).

We may address either prong first. *Id.* (citing *Pearson*, 555 U.S. at 236). Here, our inquiry begins and ends with whether Brandy alleged a violation of August's constitutional rights.

---

[3] In declining to review the state law claims, we do not opine on whether this is a case where we would have discretion to exercise pendent jurisdiction.

B.

A state generally has no affirmative obligation to protect its citizens from private harm. *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 196. But when a state affirmatively acts to restrain an individual's freedom "through incarceration, institutionalization, or other similar restraint of personal liberty," the state establishes a "special relationship" with the individual. *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (en banc) (per curiam) (quoting *DeShaney*, 489 U.S. at 200). Where a special relationship exists, a state may have a constitutional duty to protect the individual from dangers, including in certain circumstances, private harm such as private violence, *id.*, or self-inflicted harm, *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Such a relationship has arisen between a state and prisoners, *see, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994), pretrial detainees—including suspected criminals injured while being apprehended by police, *see City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983), and involuntarily-committed mental patients, *see, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982).

Yet, no constitutional duty exists where, like here, the state has not restrained an individual's liberty. This is not a case like *City of Revere*, where police injured a suspect while apprehending him. 463 U.S. at 244. There is no indication from the alleged facts that Sgt. Bordelon and Trooper LaCroix planned or attempted to arrest August or confine him to his home. They visited August's home to inform him that he was being reassigned at work, and to confirm that the premises were safe for the LSP to execute the search warrant. After they left his house, August tragically proceeded to commit suicide.

7

Indeed, Brandy does not allege in her complaint that Sgt. Bordelon or Trooper LaCroix restrained August's liberty. To the contrary, she seeks to hold them responsible for August's death because they "allowed [him] to enter his home, where his guns were," "allowed [him] to roam around his home," "d[id] nothing to restrict his movements," and then "took no action whatsoever to attempt to disarm [August]" but instead "elected to flee the home." Put otherwise, she blames them because they *did not* restrain his liberty.

Without a restraint of liberty, there is no constitutional duty. Without a constitutional duty, there can be no constitutional violation. And without a constitutional violation, Sgt. Bordelon and Trooper LaCroix are entitled qualified immunity.

\* \* \*

Because Sgt. Bordelon and Trooper LaCroix are entitled qualified immunity, we REVERSE the district court's judgment as to qualified immunity. As to the state law claims, we DISMISS the appeal without prejudice. We REMAND this matter to the district court for further proceedings consistent with this opinion.

8