# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2026

Lyle W. Cayce
Clerk

———————

No. 24-40644

———————

Johnathan Castille, *Doctor*,

*Plaintiff—Appellant*,

*versus*

Port Arthur ISD; Mark Porterie; Melissa Oliva;
Monique Bienvenue; Michael Oliver,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:23-CV-209

———————————————————

Before Smith and Richman, *Circuit Judges*.[*]

Priscilla Richman, *Circuit Judge*:

A special education administrator sued the Port Arthur Independent School District (Port Arthur ISD) and other school employees following the termination of his employment.  He alleged a conspiracy to violate his First and Fourteenth Amendment rights, claiming that he was fired because he

———————————————

[*] Judge Dennis was a member of the panel that heard this case but took inactive status after the case was submitted.  This matter is decided by a quorum under 28 U.S.C. § 46(d).

No. 24-40644

reported child abuse to his supervisor and participated in a CPS investigation. The district court granted the defendants' motions to dismiss. We affirm.

**I**

Because we are reviewing motions to dismiss for failure to state a claim, the following recounting of events "accept[s] all facts in the complaint as true, but do[es] not accept conclusory allegations, unwarranted factual inferences, or legal conclusions."[1]

Dr. Johnathan Castille was the administrator over Fine Arts and Special Education at Memorial High School in Port Arthur ISD. He alleges that while he held this position, the school's principal, Dr. Melissa Oliva, reassigned special education teachers in a manner that made it "impossible" for Castille to serve many special education students adequately.

At the start of the 2021 academic year, Michael Oliver, a special education teacher at the school, withheld lunch from a special education student as a form of discipline. Shortly after, in mid-September, Monique Bienvenue, another special education teacher, interrogated a special education student "in an extreme manner" by flipping over the student's table so that it nearly hit him. Bienvenue also emptied the student's backpack, ripped up his papers, and threw the backpack's contents onto the floor as the student cried. Oliver watched this incident without intervening, and the entire incident was caught on videotape. Castille provided Oliva with "all the documentation listing all the violations" connected with these incidents.

---

[1] *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020)).

In late September, not long after the previous incidents, Castille intervened to break up a fight between students. The next week, Oliva suspended Castille for three days with pay during an investigation into that fight; the cause for his suspension stated that he "watched two boys fight in front of the cafeteria and did not make any attempt to deescalate the situation." About two weeks after Oliva suspended Castille, he filed a grievance against Oliva regarding the fight and suspension.

Oliva and Castille met to review the videotape of the abovementioned incident involving Bienvenue. After viewing the footage, Oliva asked Castille to "state what he had seen on the video," and he responded that he had seen Bienvenue "flip the table over and rip up the student's papers." She repeated the question, and he supplied the same answer. She then stated that the school district's superintendent, Dr. Mark Porterie, "wants to get rid of you and I can't keep you if I can't trust you."

In December 2021, a Child Protective Services (CPS) agent interviewed Castille regarding Oliver's and Bienvenue's alleged abuse incidents from earlier in the fall. This interview took place in Oliva's presence, and at one point, Oliva falsely stated that she told Castille to suspend Oliver. Castille corrected Oliva on that point. Throughout January and February 2022, the mothers of the students Oliver and Bienvenue allegedly abused reached out to Castille several times inquiring whether Oliver and Bienvenue were disciplined. Castille brought these inquiries to Oliva's attention, and "[e]ach time Oliva would criticize [Castille] and pushback as she had from the beginning."

In early January 2022, Castille went to the Port Arthur ISD warehouse to collect donations for a student. While there, he borrowed two fogger/sprayer machines so that he could fog and sanitize the auditorium; the supervisor on duty, Demetria Williams, gave him permission to borrow the

foggers. He labeled the boxes to make clear they belonged to the warehouse, used them to sanitize the auditorium, and left both foggers in their boxes in the auditorium. The next day, Edgar Rideaux, the main warehouse supervisor, came to the school to speak with Castille. Rideaux asked Castille to email him instead of asking Williams whenever Castille needed something for the school campus. After Castille apologized and explained that he was unaware of that process, Rideaux responded that he understood and "just wanted [Castille] to be informed of the future process."

At the beginning of February 2022, Castille emailed school district assistant superintendent Dr. Melvin Getwood "reporting what [Castille] believed to be retaliatory harassment by Principal Oliva." The complaint does not specify what this harassment entailed. Getwood met with Castille that afternoon. Two days later, Mr. Wyble, whose position the complaint does not identify, told Castille to meet with him and Ms. Chappell-Carrier. Chappell-Carrier asked Castille about his early-January visit to the warehouse. Wyble told Castille at the meeting that he "may need" Castille to write a statement about the foggers and, if so, he "would let [Castille] know." Wyble asked Castille for a statement the next day. After another follow-up conversation in which Castille assured Wyble that he was working on the statement with his attorney, Porterie informed Castille that he was being suspended without pay because he "had not given Mr. Wyble the statement which he had requested, and that there was going to be an investigation."

Later in February, Castille filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) against the school district, claiming that Oliva, who is white, wanted to replace him with Oliver, who is also "[w]hite and mid-thirties" but "not because of his qualifications." The complaint does not specify Castille's race, but a later court filing states that Castille is Black. In that discrimination charge, he claimed that Oliva "tried

to make [Castille] fail in his job" because he opposed her discriminatory practice. He also reported (1) Oliver's August 2021 abuse incident, (2) that he heard the same student had been assaulted by another Port Arthur ISD teacher in 2019, (3) that he heard the same student had an earlier negative history with Oliva at another Port Arthur ISD school, (4) that he watched the video of Bienvenue's September 2021 abuse incident with Oliva and testified to CPS about the incident, and (5) that there was a resulting citation against Port Arthur ISD by CPS.

In May 2022, twelve days after the school district filed its position statement with the EEOC, its Board of Trustees (Board) held a regular board meeting. Castille's employment terms were not listed on the agenda published before the meeting, Castille had no notice that the Board would discuss him, and neither he nor his contract was mentioned in the minutes published after the meeting. However, the next day, Porterie notified Castille "that his 2021-2022 annual contract of employment was being terminated after an opportunity to challenge the proposed action to terminate."

Castille challenged "the proposed action," and a hearing examiner was assigned to decide whether Castille "had suffered adverse personnel actions in violation of the Texas Whistleblower Act" and "whether there existed good cause to terminate [Castille's] employment" with Port Arthur ISD. The complaint alleges that the hearing examiner "arbitrarily excluded evidence produced by [Castille]" but does not specify what that evidence was or any circumstances about the exclusion. The hearing examiner's decision "support[ed]" the proposal to terminate Castille, and in December 2022, a majority of the Board voted to adopt the hearing examiner's factual findings and legal conclusions and terminate Castille's employment. Castille appealed to the Texas Commissioner of Education, Mike Morath, who denied the appeal. Castille also filed another discrimination complaint with the EEOC and received a federal right to sue letter.

No. 24-40644

Castille then sued Port Arthur ISD, Porterie, Oliva, Bienvenue, Oliver, and Morath in the United States District Court for the Eastern District of Texas. He requested judicial review of his administrative appeal, arguing that the school district had violated the Texas Whistleblower Act. He also alleged that the school district retaliated against him for reporting to CPS, serving as a witness in the CPS investigation of abuse at the school, and for "report[ing] Oliva, Bienvenue, and . . . Oliver for conspiring to and committing aggravated assault against" two students. Finally, he claimed that "[d]efendants have joined together in a civil conspiracy to violate the rights[,] privileges[,] and immunities secured to [Castille] by the First and Fourteenth Amendments to the Constitution of the United States." He sought declaratory and injunctive relief as well as money damages.

Several defendants filed motions to dismiss, and Castille amended his complaint. The defendants then filed updated motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on Castille's lack of standing and under Federal Rule of Civil Procedure 12(b)(6) based on failure to state a claim on which relief may be granted. Castille sought leave to amend his complaint a second time, which the district court denied. The magistrate judge then issued its report and recommendation, suggesting that the case be dismissed based on Castille's failure to state a claim. Castille timely objected to the report and recommendation, but the district court adopted the report and recommendations and granted the motions to dismiss. Castille filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), which the district court denied. Castille timely appealed. Following Castille's appeal, he and Morath jointly moved to dismiss Castille's claims against Morath, and this court granted the motion. The remaining defendants are Port Arthur ISD, Porterie, Oliva, Bienvenue, and Oliver (Defendants).

6

No. 24-40644

We "review orders on Rule 12(b)(6) motions to dismiss for failure to state a claim under the *de novo* standard of review."[2] "A complaint must contain factual matter sufficient to 'state a claim to relief that is plausible on its face.'"[3] "A facially plausible claim 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[4]

## II

Castille argues that Defendants retaliated against him for the following exercises of his First Amendment right to free speech: (1) reporting child abuse to his supervisor, (2) cooperating with a CPS investigation into school employees' alleged child abuse, and (3) not describing the video of Bienvenue's September abuse incident in the manner that Oliva wished. Defendants respond that he did not engage in this speech as a citizen speaking on a matter of public concern, no unconstitutional factor motivated his termination, and caselaw forbidding "compelled speech" does not apply to these facts.

"Even if a teacher has no protectable property interest in his continued employment sufficient to invoke the protections of the due process clause, he 'may neither be dismissed or not be rehired for constitutionally impermissible reasons such as race, religion, or the assertion of rights guaranteed by law or the Constitution.'"[5] Establishing "a First Amendment

---

[2] *Id.* (citing *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021)).

[3] *Jones v. Adm'rs of the Tulane Educ. Fund*, 51 F.4th 101, 109 (5th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[4] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[5] *Coats v. Pierre*, 890 F.2d 728, 732 (5th Cir. 1989) (quoting *Ferguson v. Thomas*, 430 F.2d 852, 857 (5th Cir. 1970)).

No. 24-40644

retaliatory-discharge claim" requires the plaintiff to show "that (i) he suffered an adverse employment action; (ii) his speech involved a matter of public concern; (iii) his interest in speaking on the issue outweighed [Defendants'] interest in promoting workplace efficiency; and (iv) his speech was a substantial or motivating factor for [Defendants'] actions."[6]

## A

We must determine as a threshold issue whether Castille was speaking as a citizen or an employee.[7] "[T]he question of whether a communication is made as an employee or as a citizen is a question of law."[8] "To be speaking on a matter of public concern, the employee must speak in his capacity as citizen, not employee."[9] "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[10] "Activities undertaken in the course of performing one's job are activities pursuant to official duties."[11] "Even if the speech is of great social importance, it is not

_____

[6] *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).

[7] *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) ("*Garcetti* added a threshold layer to our previous analysis. . . . Accordingly, our first task is to determine whether Davis' speech was part of her official duties, that is whether she spoke as a citizen or as part of her public job."); *see also Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008) ("Before proceeding to examine the substance of Charles's speech, we must first focus on his role when he uttered it.").

[8] *Davis*, 518 F.3d at 315.

[9] *Gibson v. Kirkpatrick*, 838 F.3d 476, 481 (5th Cir. 2016).

[10] *Lane v. Franks*, 573 U.S. 228, 240 (2014); *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

[11] *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).

protected by the First Amendment so long as it was made pursuant to the worker's official duties."[12]

Castille argues that his speech involved a matter of public concern because reporting child abuse is a mandatory duty for everyone in Texas, not just school officials. The Texas Family Code provides that a "person having reasonable cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report" of that abuse or neglect.[13] The law in effect at the time of the incidents in question further required that "professional[s]," "includ[ing] teachers," "shall make a report not later than the 48th hour after the hour the professional first has reasonable cause to believe that the child has been or may be abused or neglected."[14] In the time since the alleged events occurred, the Texas Legislature amended the Code to require a professional to report within twenty-four hours.[15] The report must be made to a law enforcement agency or the Department of Family and Protective Services.[16]

We need not decide whether an educator reporting child abuse to the authorities under a state-law-mandated reporting requirement constitutes speech as a citizen. In this case, Castille did not allege that he directly reported suspected child abuse to law enforcement or the Department of

_____

[12] *Id.* at 692.

[13] TEX. FAM. CODE ANN. § 261.101(a).

[14] Duty to Report Child Abuse and Neglect, 87th Leg., R.S., ch. 902, § 1, 2021 Tex. Gen. Laws 2209, 2209 (amended 2025) (current version at TEX. FAM. CODE ANN. § 261.101(b)).

[15] TEX. FAM. CODE ANN. § 261.101(b).

[16] *Id.* § 261.103(a), (d); *see also id.* § 261.001(2) (defining "[d]epartment" as the "Department of Family and Protective Services").

No. 24-40644

Family and Protective Services, as required by state law. Castille reported the child abuse only to his direct supervisor, and then he cooperated with a CPS investigation during which he was interviewed in the presence of his direct supervisor. It is unclear who reported the abuse to CPS to initiate this investigation. We accordingly ask whether Castille spoke as a citizen or an employee (1) when reporting instances of child abuse by teachers under his supervision internally to his direct supervisor, (2) when participating in a CPS investigation with his direct supervisor, and (3) when refusing to describe an incident in a particular way to his supervisor.

**1**

Castille argues that reporting child abuse to his direct supervisor, Principal Oliva, was protected speech. That Castille spoke within the office rather than publicly is not dispositive.[17] We assess whether this activity was "undertaken in the course of performing [his] job."[18] As the administrator over Special Education, Castille oversaw the Special Education students and teachers. In this oversight role, he provided his supervisor, Principal Oliva, with "all the documentation listing all the [abuse] violations." Reporting abuse violations involving the teachers and students under his care to his direct supervisor was an activity "undertaken in the course of performing [his] job."[19]

In *Williams*, we concluded that an Athletic Director's memoranda to his supervising principal were not protected speech because the memoranda

---

[17] *See Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work.").

[18] *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).

[19] *Id.*

included "special knowledge" gained in the course of his job, involved "concerns about the program he ran," and were written so he could "properly execute" his job responsibilities.[20]    Similarly, here, the information Castille reported was special knowledge gained as part of his job; his reports involved concerns about the Special Education students and teachers he supervised; and he was concerned about properly executing his job as administrator over the teachers and students involved by, for example, advocating for "disciplinary actions."  His reports to Principal Oliva were made as an employee, not a citizen.

**2**

Castille's participation in a CPS investigation as the administrator over the teachers whose conduct was at issue was speech as an employee in the course of his job responsibilities.  The Supreme Court's decision in *Lane v. Franks*, which held that "the First Amendment protects a public employee who provides truthful sworn testimony . . . outside the scope of his ordinary job responsibilities,"[21] does not control this case.  Castille did not provide sworn testimony, nor did he "testif[y] before an official government adjudicatory or fact-finding body."[22]  He also did not allege that he made independent reports to CPS outside the course of his usual job duties.[23]  Rather, a CPS agent interviewed him about alleged abuse by teachers who were under his supervision and under the supervision of Principal Oliva, who

---

[20] *Id.* at 694.

[21] *Lane v. Franks*, 573 U.S. 228, 238 (2014).

[22] *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989).

[23] *Cf. Davis v. McKinney*, 518 F.3d 304, 314-16 (5th Cir. 2008) (reasoning that, when an auditor contacted the FBI and EEOC, those reports "were not made as an employee" since communicating "with outside police authorities or other agencies" was "not within an auditor's job function").

participated in the interview alongside Castille.  Castille acted within his job responsibilities as an administrator over Special Education to raise concerns about child abuse of Special Education students to his direct supervisor and to participate with his supervisor in a CPS investigation into those incidents. Since Castille spoke as an employee and not a citizen, his speech is not protected by the First Amendment.

**3**

Castille also alleges that he engaged in protected speech when he refused to describe the video of Bienvenue's abuse incident in the manner that Oliva wished.  This conversation was one between Oliva as principal and Castille as the special education administrator regarding a special education teacher's treatment of a special education student.  It fits squarely within the scope of Castille's job responsibilities and is not protected speech.

The cases Castille cites to support his contention that his refusal to speak constitutes protected speech are inapposite.  In the first, the Supreme Court held that a private citizen may cover up the state's motto on their license plate, and in the second, the Supreme Court held that a person may not be required  to subsidize speech with which they disagreed.[24]  Castille also cites a case from our circuit expounding on the illegality of perjury.[25]

---

[24] *See Wooley v. Maynard*, 430 U.S. 705, 707, 713 (1977) (holding that a New Hampshire resident may cover up the state motto on their license plate because the state may not "constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public"); *United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001) ("First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech on the side that it favors . . . the compelled funding for the advertising must pass First Amendment scrutiny.").

[25] *Springer v. Coleman*, 998 F.2d 320, 322 (5th Cir. 1993).

No. 24-40644

Castille cites a Second Circuit decision that is also distinguishable,[26] and in any event, is in tension with our circuit's precedent.[27] These cases do not support the contention that Castille's refusal to characterize the video of Bienvenue's abuse in a specific way, despite pressure from Oliva, was protected speech.

Since we conclude that Castille spoke in his role as an administrator and not as a citizen, we do not reach whether his speech was on a matter of public concern.

### III

Castille argues that his termination violated his Fourteenth Amendment due process rights. Castille's "due-process theory requires him to identify a protected life, liberty, or property interest and prove that 'governmental action resulted in a deprivation of that interest.'"[28] Even if we assume that Castille could establish a protected property interest in his continued employment, his claims fail because he cannot otherwise demonstrate a violation of his procedural or substantive due process rights.

---

[26] *See Jackler v. Byrne*, 658 F.3d 225, 241-42 (2d Cir. 2011) (holding that a police officer's "refusal to comply with orders to retract his truthful Report and file one that was false has a clear civilian analogue and that [the police officer] was not simply doing his job in refusing to obey those orders from the department's top administrative officers and the chief of police").

[27] *See Anderson v. Valdez*, 913 F.3d 472, 477-78 (5th Cir. 2019) (citing *Gibson v. Kilpatrick*, 773 F.3d 661, 669-70 (5th Cir. 2014)) ("His argument is essentially that a job-imposed duty with a 'citizen analogue' is never an official duty for the purposes of *Garcetti*. But this relies on an implicit premise . . . that we have explicitly declined to adopt.").

[28] *Wilkerson v. Univ. of N. Tex. ex rel. Bd. of Regents*, 878 F.3d 147, 155 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)).

No. 24-40644

## A

For a procedural due process claim, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*"[29]  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[30]  An "employee who has a constitutionally protected property interest in his employment" is entitled to "'some kind of a hearing' prior to [his] discharge."[31]  The "formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."[32]  But the "essential requirements of due process . . . are notice and an opportunity to respond."[33]

Castille alleges that on May 18, 2022, he received notice by letter from Porterie that the Board had proposed terminating his contract, and he had an opportunity to challenge that proposed action.  He did challenge the proposed action and was assigned a hearing examiner, who received evidence, conducted a hearing in October, and issued a decision.  The hearing examiner's decision supported the proposed termination, and a majority of the Board then voted to adopt the examiner's findings of fact and conclusions of law and terminate Castille's employment.  Castille exercised his right to

---

[29] *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

[30] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[31] *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)).

[32] *Id.* at 545 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)).

[33] *Id.* at 546.

appeal to the Texas Commissioner of Education, who issued a final administrative decision denying the appeal.

Castille argues that (1) he should have received notice before the Board voted to propose his termination, and (2) the hearing was insufficient because the hearing examiner "arbitrarily excluded" evidence that he produced. First, Castille cites no authority suggesting that notice before the initial Board vote was necessary. During the initial vote, the Board appears to have voted only to propose his termination, not actually to terminate him; the termination decision was not made until after his notice and hearing process was complete. Castille received pre-termination notice, as required under *Loudermill*.[34] Second, while Castille claims that the hearing examiner arbitrarily excluded evidence, he does not allege what evidence the hearing examiner excluded, the purpose of the evidence, or why the decision to exclude them was "arbitrary." In our review, we "do not accept conclusory allegations" as true,[35] and Castille has not pleaded facts that demonstrate he did not receive meaningful due process.

## B

As to his substantive due process claim, assuming Castille had a property interest in his continued employment, he must show "that the public employer's termination of that interest was arbitrary or capricious."[36] "Substantive due process 'bars certain arbitrary, wrongful government

---

[34] *Loudermill*, 470 U.S. at 542; *see also Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) ("At a minimum, however, an employee facing termination must be given 'notice and an opportunity to respond' *before* the termination takes effect." (quoting *Loudermill*, 470 U.S. at 546)).

[35] *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024).

[36] *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quoting *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

actions regardless of the fairness of the procedures used to implement them.'"[37]  But "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest."[38]  A plaintiff "must 'demonstrate that the abuse of power by the state official shocks the conscience.'"[39]  Conduct that shocks the conscience is conduct that:

> "violates the decencies of civilized conduct"; . . . is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; . . . "interferes with rights implicit in the concept of ordered liberty"; and . . . "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[40]

"Many cases that have applied the standard have involved the use of extreme force by police officers or other state actors."[41]  The "burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme."[42]

---

[37] *Id.* (quoting *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007)).

[38] *Id.* at 631 (quoting *Tex. ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)).

[39] *Id.* (quoting *Marco*, 489 F.3d at 672 n.3).

[40] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47, 847 n.8 (1998)).

[41] *Id.* at 867-68 (collecting cases).

[42] *Id.* at 868 (quoting *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010)).

In this case, Castille's allegations do not surmount this high bar. In his complaint, Castille asserts that he was assigned a hearing examiner who received evidence and made a "decision based on [the school district's] burden to support its claims that [he] should be terminated by a preponderance of the evidence." Castille states that the hearing examiner "arbitrarily excluded evidence produced by [him]," and "intentionally constructed an arbitrary decision supporting [the school district's] proposed termination of [him], transparently made up of arbitrary findings of fact and conclusions of law, which were clearly pretextually contrived to effect [the school district's] desired goal." Then, Castille notes that "a majority of the [Port Arthur ISD] Board of Trustees arbitrarily voted to adopt the [hearing examiner's] Findings of Fact and Conclusions of Law and terminate [his] employment." Castille also alleges that Port Arthur ISD "retaliated against [him] because he, in good faith, reported and served as a witness against [the school district] to an appropriate law enforcement authority, the Department of Family and Protective Services – Child Protective Services."

At oral argument, counsel for Castille noted that the hearing examiner's recommendation for termination was based on the incident with the foggers/sprayers and the delayed giving of a statement about the incident. Notwithstanding Castille's claims that he was fired based on his participation in a CPS investigation, his conclusory allegations fail to explain how the hearing examiner's recommendation to fire Castille was "arbitrary," nor does he describe why the Board's adoption of the recommendation was "arbitrary."

Additionally, Castille cites no authority in his opening brief to support his argument that his substantive due process rights were violated. Given the bare pleadings in this case, we cannot conclude that Defendants' actions

"extend[ed] beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." [43]

## IV

Castille argues the district court erred in granting qualified immunity to the individual defendants. "To defeat a defendant's assertion of qualified immunity, the plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" [44] As explained above, Castille has not sufficiently pled that Defendants violated his constitutional rights. They are entitled to qualified immunity.

## V

Castille argues the district court erred in evaluating his conspiracy claim under 42 U.S.C. § 1985 rather than under 42 U.S.C. § 1983. Regardless, Castille's claim also fails under § 1983. A § 1983 civil conspiracy claim requires a plaintiff to allege facts "establish[ing] (1) the existence of a conspiracy involving state action" and "(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." [45] As discussed above, Castille did not sufficiently plead a deprivation of his constitutional rights. We affirm the district court's dismissal of his conspiracy claim.

---

[43] *Doe ex rel. Magee*, 675 F.3d at 868 (quoting *Gloria*, 593 F.3d at 80).

[44] *Trevino v. Iden*, 79 F.4th 524, 530-31 (5th Cir. 2023) (quoting *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019)).

[45] *Shaw*, 918 F.3d at 419 (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by*, *Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)).

No. 24-40644

## VI

As to Castille's argument that the district court erred in failing to take judicial notice of the "complete Administrative Record" of proceedings before the Texas Commissioner of Education, we conclude this was not an abuse of discretion.

Castille asked the district court to take judicial notice of the "complete Administrative Record" after the magistrate judge issued a report and recommendation and before the district court's order adopting the report. The district court did not explicitly rule on Castille's request to take judicial notice. However, it recognized that at the motion to dismiss stage, "the Court is limited to reviewing the four corners of the Complaint." When issuing its final judgment, the district court denied as moot all pending motions, which included Castille's request to take judicial notice. Castille's corrected Rule 59(e) motion to alter the judgment did not argue that the district court erred by denying his request to take judicial notice of the record. But Castille now argues before this court that the "district court abused its discretion by failing to take judicial notice of and consider the complete Administrative Record," which "substantially prejudiced [his] ability to present his case." He claims such failure "directly affected [the court's] analysis of [his] constitutional claims."

Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[46] A court "must take judicial notice if a party requests it and

---

[46] FED. R. EVID. 201(b).

the court is supplied with the necessary information."[47]   This necessary information may include "a careful delineation of the fact to be noticed," "the purpose and relevance of the noticed fact," "authority for noticing the fact," and "the source of 'indisputable accuracy' for an 'ascertainable fact' under Rule 201(b)(2)."[48]

"We review evidentiary rulings only for abuse of discretion and will reverse a judgment on the basis of evidentiary rulings only if the challenged ruling affects a substantial right of the party."[49]   "We apply the same standard when reviewing a district court's use of judicial notice."[50]   "To show an abuse of discretion, the appellant must demonstrate that the district court's evidentiary decision was"[51] "based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[52]   When considering a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," including "documents incorporated into

---

[47] *Id.* (c)(2).

[48] 21B Wright & Miller's Federal Practice & Procedure § 5107.1 (2d ed. 2025).

[49] *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022) (quoting *S. Pac. Transp. Co. v. Chabert*, 973 F.2d 441, 448 (5th Cir. 1992)).

[50] *Id.* (citing *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 422 (5th Cir. 2013)).

[51] *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441, 446-47 (5th Cir. 2024).

[52] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Resol. Trust Corp. v. Bright*, 6 F.3d 336, 340-41 (5th Cir. 1993)); *see also Gibson, Inc.*, 107 F.4th at 447.

the complaint by reference, and matters of which a court may take judicial notice."[53]

The district court did not abuse its discretion in failing to judicially notice the "complete Administrative Record." First, Castille did not supply the "necessary information." Castille's motion asked the court "to take judicial notice of Doc. 22 and the 1032 documents filed therein (USB with the District Clerk)," but did not identify the contents of Document 22, the source of those contents, which facts within the 1032 documents were relevant, or why the document was not subject to reasonable dispute. Castille's motion stated, "Attached as Exhibit {*letter*} is the necessary information for the court to take judicial notice of the requested facts," but he did not attach an exhibit to the filing. The record contains some information about the Administrative Record, with Morath identifying Document 22 as his "Notice of Filing Administrative Record," which came from Castille's proceedings before the Commissioner of Education. However, in neither the district court nor this court does Castille explain with relevant authorities why the court should take judicial notice of an entire administrative record that does not appear to be publicly available.[54]

Second, Castille does not demonstrate how failure to take notice of the Administrative Record prejudiced his "ability to present his case." His

---

[53] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

[54] *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of public disclosure documents filed with the SEC "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records stored on state agencies' websites when their accuracy could not "reasonably be questioned").

conclusory statements to that effect do not establish an impact on his substantial rights.

Third, Castille did not ask the court to take judicial notice of the Administrative Record, which is 1032 pages, until eight months after Morath first filed the record and several days after the magistrate judge issued her report and recommendation. For these reasons, the district court did not abuse its discretion in denying his request to take judicial notice.

## VII

We do not reach the issue of *Monell* liability for Defendants since Defendants committed no constitutional violations under the alleged facts. We also decline to address Castille's Texas Whistleblower Act claim and his claim that the district court should have granted leave to amend his complaint a second time. Castille mentioned the whistleblower claim in the jurisdictional statement and the conclusion of his opening brief, requesting we "[r]emand this case to the district court with instructions to . . . [r]einstate [his] constitutional claims and Whistleblower claim." He otherwise presented no arguments about his whistleblower claim. "[A] [party] waives an issue if he fails to adequately brief it."[55] Because Castille did not discuss this claim in his opening brief, he has waived this issue. Similarly, the denial of leave to amend was not raised in the opening brief, and the issue was argued only in the response and reply briefs. "[A]n

---

[55] *Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019) (second alteration in original) (quoting *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001)).

No. 24-40644

appellant abandons all issues not raised in its *initial* brief."[56]   Therefore, these issues have been waived.

\*        \*        \*

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[56] *United Paperworkers Int'l Union AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990) (citing *Piney Woods Country Life Sch. v. Shell Oil Co.*, 905 F.2d 840, 854 (5th Cir. 1990)).